**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAN ALLEN DAHLSTROM,

        Plaintiff,

v.                                                Case No. 10-CV-12542
                                                                Honorable Denise Page Hood

MICHIGAN STATE POLICE TROOPER TROY
BONADURER,

        Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action was filed pursuant to 18 U.S.C. § 1983. Now before the Court is Defendant's Motion for Summary Judgment, filed July 31, 2012. For the reasons stated below, the Court GRANTS Bonadurer's Motion for Summary Judgment.

**II.    STATEMENT OF FACTS[1]**

On June 28, 2010, Plaintiff Daniel Dahlstrom went to a bar at the Otisville Hotel. [Docket No. 47, Pg ID 185]. There he had approximately three Bloody Mary drinks and two beers. [Docket No. 47, Pg ID 185-86]. He stayed at the Otisville Hotel from approximately 9:00 p.m. to midnight with one interruption when he drove a friend home.[2] [Docket No. 47, Pg ID 185]. Dahlstrom was not able to finish his last Bloody Mary and beer because he was involved in a verbal altercation with the bartender's boyfriend. [Docket No. 47, Pg ID 186-87].

---

[1] Dahlstrom does not provide an alternative version of facts. He does attach to his reply brief the transcript of an administrative hearing appealing the loss of Dahlstrom's license due to alleged refusal to submit to a chemical test. Dahlstrom only cites one section of the transcript where the hearing office makes a legal conclusion.

[2] The friend had too much to drink. Dahlstrom testified that this trip took approximately ten to 15 minutes. [Docket No. 47, Pg ID 186].

Dahlstrom drove toward home. Dahlstrom lives in Otisville, Michigan, which is a rural area. His home is approximately a quarter mile from his neighbor's home. [Docket No. 47, Pg ID 224]. On his way home, Dahlstrom testified that a deer ran in front of his car. [Docket No. 47, Pg. ID 189]. He "slammed on [his] breaks" but the brakes failed and Dahlstrom's car swerved into his neighbor Ted Carpenter's yard. [Docket No. 47, Pg ID 189]. The car crossed the front yard and stopped in a swamp. [Docket No. 47, Pg ID 189]. Mr. Carpenter's wife, Sharon Carpenter, testified that she called 911 at her husband's direction. [Docket No. 47, Pg ID 214, 224].

Dahlstrom knocked on the front door and told Mr. Carpenter that he had just driven through the fence. [Docket No. 47, Pg ID 191, 224]. He asked Mr. Carpenter to refrain from calling the police because he had been drinking. [Docket No. 47, Pg ID 192, 224]. Upon being told the police had already been contacted, Dahlstrom asked if Mr. Carpenter could call the police back and tell them everything was okay. Dahlstrom claims that his neighbor agreed. [Docket No. 47, Pg ID 192].

Dahlstrom then walked home and had "three or four swallows" of a bottle of Captain Morgan's that he kept in his garage to "calm [his] nerves." [Docket No. 47, Pg ID 193]. He walked into his kitchen and found his then wife, Connie VanDyke, sitting at the kitchen island working on her laptop. [Docket No. 47, Pg ID 193]. He became upset with her because he realized he would be in trouble over the accident and may lose his license. [Docket No. 47, Pg ID 193]. He blamed the entire incident on his wife. [Docket No. 47, Pg ID 193]. He admitted that he screamed at her. [Docket No. 47, Pg ID 193].

When Defendant Michigan State Trooper Troy Bonadurer first arrived at the Carpenter's home, Mr. Carpenter explained to Trooper Bonadurer what happened and that he believed Dahlstrom had been drinking. [Docket No. 47, Pg ID 227]. Trooper Bonadurer then went to

2

Dahlstrom's home. [Docket No. 47, Pg ID 227].

Dahlstrom was yelling at his wife for approximately three to five minutes when the garage side doorbell rang. [Docket No. 47, Pg ID 195]. Dahlstrom ignored the ring and continued yelling at his wife. [Docket No. 47, Pg ID 195-96]. The doorbell then rang a second time. [Docket No. 47, Pg ID 195]. At some point before the first doorbell ring, Dahlstrom threw his wife's laptop up against the counter and unto the floor, breaking it.[3] [Docket No. 47, Pg ID 195-96, 242]. Upon the second ring, Dahlstrom left the kitchen and went into the garage. [Docket No. 47, Pg ID 196]. He saw a police car in the driveway. [Docket No. 47, Pg ID 197]. When Dahlstrom walked out onto the driveway, he saw Trooper Bonadurer exit the garage behind him. [Docket No. 47, Pg ID 197].

Dahlstrom accused Trooper Bonadurer of trespassing and demanded that he leave.[4] [Docket No. 47, Pg ID 198]. When Trooper Bonadurer refused to leave after Dahlstrom's second demand, Dahlstrom told Trooper Bonadurer, "Well, then I guess I'll have to kick your ass." [Docket No. 47, Pg ID 199]. Trooper Bonadurer then informed Dahlstrom that he would have to tase Dahlstrom. Dahlstrom again informed Trooper Bonadurer that he was trespassing and then said "if you're not going to leave then I'm going to have to kick your ass." [Docket No. 47, Pg ID 199]. Dahlstrom testified that he also told Trooper Bonadurer "you might as well put your taser away and get your pistol out and shoot me . . . you might as well shoot me because if I get a hold of you I'll probably break your neck." [Docket No. 47, Pg ID 199]. Trooper Bonadurer walked around to his vehicle

---

[3] Dahlstrom testified that he threw her laptop onto the floor when he initially came in. [Docket No. 47, Pg ID 196]. He later confirmed that he threw the laptop on the floor then heard the doorbell ring. [Docket No. 47, Pg ID 196]. His wife also testified that Dahlstrom threw her laptop onto the floor before the first doorbell ring. [Docket No. 47, Pg ID 196].

[4] Connie testified that Trooper Bonadurer was talking in a normal voice and Dahlstrom was yelling. [Docket No. 47, Pg ID 244].

and deployed his taser from over the trunk of the vehicle. [Docket No. 47, Pg ID 199]. The prongs hit Dahlstrom in the chest and belly. [Docket No. 47, Pg ID 199]. Dahlstrom was unsuccessful in pulling out the prongs. [Docket No. 47, Pg ID 200]. Dahlstrom testified that Trooper Bonadurer kept telling him to get down but Dahlstrom did not get down right away. [Docket No. 47, Pg ID 200]. Eventually, Dahlstrom gave in and got down to the ground. [Docket No. 47, Pg ID 200].

Trooper Bondarurer asserts and Dahlstrom does not contest that Dahlstrom was charged with operating a vehicle while intoxicated and resisting/obstructing a police officer. On December 17, 2008, Dahlstrom plead nolo contendere to leaving the scene of an accident. [Docket No. 47, Pg ID 258-60].

Dahlstrom filed the present action in this Court against Trooper Bonadurer on June 28, 2010 regarding incidents that took place on June 29, 2008. Dahlstrom makes the following allegations in this 42 U.S.C. § 1983 action: assault and battery; false arrest; false imprisonment; and malicious prosecution.

### III. STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (U.S. 1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380.

**IV.    ANALYSIS**

Trooper Bonadurer asserts that he is entitled to qualified immunity. Qualified immunity is generally a threshold defense which applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Therefore, the doctrine of qualified immunity shields a government official engaged in a discretionary function "from liability [and, indeed, from suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cope v. Heltsley*,

128 F.3d 452, 457 (6th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Ashcroft v. Igbal*, 556 U.S. 662 (2009) (quoting *Mitchell v. Forysyth,* 472 US 511, 526 (1985)) (qualified immunity provides "both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'").

The Supreme Court has set forth a two-part test to determine whether qualified immunity is appropriate. First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). The second inquiry requires the court to determine whether the right asserted was clearly established. *Id.* The court must consider whether a reasonable official would know that his conduct was unlawful in that situation. *Id.* Plaintiff must show that the officer's conduct violated a right so clearly established that any official in the official's position would have understood that they were under an affirmative duty to refrain from such conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

In other words, the officer's conduct must be objectively unreasonable in light of the plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F. 3d 685, 691 (6th Cir. 1999). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)); *see also Saylor v. Board of Educ.*, 118 F.3d 507, 515–516 (6th Cir. 1997) (quoting *Lassiter v. Alabama A&M Univ., Bd. of*

*Trustees,* 28 F.3d 1146, 1150 (11th Cir. 1994) ) ("For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.") (emphasis in original).

The court, however, is not required to strictly follow this two-step sequence. The court is free to decide the second question prior to resolving the constitutional issue where appropriate. *Pearson*, 555 U.S. at 236 ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

    **A.**    **Unlawful Entry**

Trooper Bonadurer argues that his entry into Dahlstrom's home was reasonable under the exigent circumstances exception to the warrant requirement. The Fourth Amendment protects individuals from the unreasonable entry into the home. *Johnson v. City of Memphis*, 617 F.3d 864, 867 (6th Cir. 2010). The entry into a home without first obtaining a warrant is presumptively unreasonable. *Johnson*, 617 F.3d at 868. However, the rule against warrantless entry into a home is not without its exceptions. The existence of "exigent circumstances" may render a warrantless entry reasonable. *Id.* "Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant." *Id*. The Sixth Circuit has recognized four circumstances that rise to the level of an exigent circumstance: hot pursuit of a fleeing felon; imminent destruction of evidence; need to prevent a suspect's escape; and risk of danger to police or others. *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). "[L]aw enforcement

officers 'may enter a home with out a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Michigan v. Fisher*, 558 U.S. ___ , 130 S.Ct. 546, 548 (2009).

An officer does not require "ironclad proof" that exigent circumstances exist nor does the officer have to wait until a situation escalates into violence to decide to act. *Johnson*, 617 F.3d at 868 ("'[T]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties.'") (quoting *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006)). The appropriate standard is whether a reasonable officer in those circumstances would reasonably believe that exigent circumstances existed. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002).

The Court finds that the circumstances presented at the time constituted exigent circumstances. Trooper Bonadurer was called to the scene of an accident. When he arrived at the Carpenter's home, he found a car abandoned in a swamp. Mr. Carpenter told Trooper Bondaurer that Dahlstrom had been drinking, a fact that Dahlstrom testified that he had confessed to Mr. Carpenter. Trooper Bonadurer went to Dahlstrom's home expecting to find someone who was intoxicated. Dahlstrom's wife testified that Dahlstrom had slammed a door into the wall several times. She and Dahlstrom both confirmed that Dahlstrom was yelling and that he slammed a laptop onto the counter and then onto the floor after hearing the doorbell ring. Dahlstrom continued to yell even after hearing the doorbell. Knowledge that Dahlstrom was driving while intoxicated coupled with yelling, the sound of slamming doors and breaking laptops, and Dahlstrom ignoring two doorbells would infer that a violent domestic situation was taking place. Trooper Bonadurer should not have been required to wait until Dahlstrom's wife was harmed to intervene.

Dahlstrom counters that whether exigent circumstances existed is a question of fact. He further asserts that Dahlstrom's wife was not in danger and Trooper Bonadurer did not inquire into her wellbeing. "Although the determination of exigent circumstances is normally a question for the jury, 'in a case where the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law.'" *Ewolski*, 287 F.3d at 501 (quoting *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)). Dahlstrom has not disputed the facts as Trooper Bonadurer presented them. Dahlstrom notes that his wife indicated that she did not feel threatened at that time because she had previously experienced similar situations with Dahlstrom. Dahlstrom's wife's view of the circumstances at that time is irrelevant. The Court's inquiry requires it to determine whether a reasonable officer presented with the facts as Trooper Bonadurer experienced them would reasonably believe that exigent circumstances existed. The Court finds that such circumstances existed. *See Johnson*, 617 F.3d at 869 (holding that "the combination of a 911 hang call, an unanswered return call, and an open door with no response from within the residence is sufficient to satisfy the exigency requirement.")

### B.     Excessive Force

Trooper Bonadurer contends that Dahlstrom has failed to provide any evidence of excessive force. Dahlstrom merely denies Trooper Bonadurer's argument and contends that there is evidence that he suffered excessive force. Dahlstrom notes several injuries that he allegedly suffered to his hip and lower back and provides a medical report in support.

Whether an officer has violated the Fourth Amendment by exerting excessive force must be "judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of

hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). An officer making an arrest has "the right to use some degree of physical coercion or threat thereof" to effectuate the arrest. *Id.* The Court must be mindful that officers must make split-second decisions in situations that are volatile. *Id.* at 396–97. The Court, therefore, must consider the officer's actions in light of the totality of the circumstances. *Id.*

The record shows that Dahlstrom was quite belligerent. He admitted to telling Trooper Bonadurer that he would break his neck and that Trooper Bonadurer should use his gun and not the taser. Dahlstrom also admitted that he did not get down immediately when he was asked after being tased because he still had it in his mind to get at Trooper Bonadurer. Trooper Bonadurer was told that Dahlstrom was intoxicated. When Dahlstrom confronted Trooper Bonadurer, it was apparent that Dahlstrom was intoxicated. It is reasonable for an officer, when presented with an intoxicated defendant that is threatening bodily harm to use force to effectuate an arrest. The Court resolves the excessive force claim in favor of Trooper Bonadurer.

      **C.**      **False Arrest and False Imprisonment**

Dahlstrom contends that Trooper Bonadurer did not have probable cause to arrest him for leaving the scene of an accident, a misdemeanor. He further asserts that he was deprived of his liberty when he was arrested and tied to a pole and mocked by other officers.[5] An officer's warrantless arrest is reasonable when there was probable cause that a criminal offense has been or was being committed. *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). Whether the suspect actually committed a crime is irrelevant. *Id*. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.*

---

[5] There is no evidence that Trooper Bonadurer was involved in tying Dahlstrom to a pole.

10

(quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2002)).

It appears that probable cause existed at the time of Dahlstrom's arrest. Trooper Bonadurer had information that Dahlstrom had been driving while intoxicated when he arrived at Dahlstrom's home. Dahlstrom even admits that he continued to drink after he arrived home. Furthermore, Dahlstrom's erratic behavior provided probable cause to arrest him. Dahlstrom threatened Trooper Bonadurer with serious bodily harm, indicating that he would break Trooper Bonadurer's neck. Dahlstrom's behavior is sufficient under the circumstances to warrant probable cause to effectuate a warrantless arrest.

### D.     Malicious Prosecution

Trooper Bonadurer argues that Dahlstrom has not satisfied the elements for malicious prosecution under the Fourth Amendment.[6] Dahlstrom provides no counter argument and appears to concede Trooper Bonadurer's argument. The Court grants summary judgment as to the malicious prosecution claim.

### E.     Michigan State Law Claims

Trooper Bonadurer argues that he is entitled to governmental immunity under Michigan law and that he has not committed an assault and battery because the force used under the circumstances was reasonable. He relies on his arguments for excessive force. Dahlstrom does not provide any argument as to his Michigan assault and battery claim and appears to concede them. The Court finds that Trooper Bonadurer is entitled to governmental immunity under Michigan law.

---

[6] The elements of malicious prosecution under the Fourth Amendment are as follows: (1) The defendant "ma[d]e, influence[d], or participate[d] in the decision to" initiate criminal prosecution against the plaintiff; (2) There was no probable cause; (3) Plaintiff suffered a "'deprivation of liberty' . . . apart from the initial seizure" as a consequence of the prosecution; and (4) The criminal prosecution was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

Michigan Complied Law § 691.1407(1) provides that "a governmental agency is immune from tort liability if the government agency is engaged in the exercise or discharge of a governmental function." Such liability is extended to an employee of a governmental agency if the employee (a) "is acting or reasonably believes he or she is acting within the scope of his or her authority"; (b) "the governmental agency is engaged in the exercise of discharge of a governmental function"; and (c) "the officer's . . . conduct does not amount to gross negligence that is the proximate cause of the injury of damage." MICH. COMP. LAWS § 691.1407(2). However, the common law rule applies for intentional torts. MICH. COMP. LAWS § 691.1407(3); *see also Odom v. Wayne County*, 482 Mich. 459, 472 (2008).

The Michigan Supreme Court provided the following test for determining whether there was immunity from liability for intentional torts: (1) the act was taken during the course of employment and the employee acted or reasonably believed he acted within the scope of employment; (2) the act was taken in good faith; (3) the act was discretionary and not ministerial in nature. *Odom*, 482 Mich. at 473-76. A police officer is acting in good faith when he has probable cause to make the arrest. *Odom*, 482 Mich. at 473. A police officer performs a discretionary function when he "must use his judgment to determine whether there is reasonable suspicion to investigate or probable cause to arrest and to determine the amount of force necessary to effectuate an arrest." *Id.* at 476.

Here, the Court finds that Trooper Bonadurer is entitled to governmental immunity. Dahlstrom's arrest was made in the course of his employment as a police officer. The record shows that Trooper Bonadurer acted in good faith and Dahlstrom has not provided any contrary evidence to show that Trooper Bonadurer acted maliciously. Furthermore, the act of determining whether there was probable cause to arrest and the amount of force to use against Dahlstrom to effectuate the

12

arrest are discretionary as opposed to ministerial duties.

Even if immunity did not attach, there was probable cause to arrest Dahlstrom. He was belligerent and had been operating a vehicle under the influence. Furthermore, Dahlstrom was visibly intoxicated. Dahlstrom must prove that probable cause did not exist to support his claims for false arrest, *Burns v. Olde Discount Corp.*, 212 Mich. App. 576, 581 (1995), malicious prosecution, *Id.*, and false imprisonment, *Tope v. Howe*, 179 Mich. App. 91, 105 (1989). Dahlstrom has not provided any evidence that Trooper Bonadurer lacked probable cause to arrest him or that the charges made against him lacked probable cause. All Dahlstrom has provided is a general denial of Trooper Bonadurer's allegations, one citation to an administrative hearing, and medical records; this is insufficient to survive a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1) (noting that a party asserting that a genuine issue of material fact must support the assertion by "citing to particular parts of materials in the record" or "show that materials cited do not establish . . . a genuine dispute.") The Court enters judgment in Trooper Bonadurer's favor as a matter of law.

### IV. CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 47, filed July 31, 2012] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

Dated: March 28, 2013  S/Denise Page Hood
Denise Page Hood
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 28, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

13